IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>KIMBERLY ANN KENT<br>GREGG TERRY KENT,<br><br>          Debtors. | Chapter 11<br><br>Case No. 2:07-bk-03238-SSC<br><br>(Not for Publication- Electronic Docketing ONLY)<br><br>MEMORANDUM DECISION ON DEBTORS' MOTION TO DISMISS |

## I. INTRODUCTION

This matter comes before the Court on a "Motion to Dismiss" filed with the Court on May 28, 2008 by Kimberly and Gregg Kent (the "Debtors"). An "Objection to Debtors' Motion to Dismiss Bankruptcy Case and Motion to Convert" was filed on June 19, 2008 by Osborn Maledon ("OM"), a creditor. The Debtors filed a Response on June 30, 2008. The matter was further complicated by the fact that the Debtors requested a hearing on their Motion to Dismiss, along with a hearing on the joint settlement entered into between the Debtors and Kent & Wittekind, P.C. ("K&W"). The Court concluded that it could approve the settlement between the Debtors and K&W based upon what was presented at the hearing on July 1, 2008. However, the Court separately determined that a further evidentiary hearing must be conducted on the Debtors' Motion to Dismiss and OM's Cross Motion to Convert.[1] The Debtors then filed a "Reply in Support of Motion to Dismiss and Opposition to Osborn Maledon, P.A.'s Motion to

---

**1.** *See* Docket Entry No. 462, which is the Court's Memorandum Decision on settlement, the Motion to Dismiss and the Cross Motion to Convert.

1

Convert" on August 14, 2008. A "Withdrawal of Motion to Convert and Sur-Reply Regarding Debtors' Motion to Dismiss Case" ("Sur-Reply") was filed on August 22, 2008 by OM.

After conducting a hearing on the matter on August 27, 2008,[2] taking into consideration the arguments of each of the parties, the documents filed, and the entire record before the Court, the Court has set forth in this decision its findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, Bankruptcy Rule 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§ 1334 and 157 (West 2008).

## II. FACTUAL BACKGROUND

The Debtors have been married for eighteen years and have been residents of Arizona for this entire time. Ms. Kent was a registered nurse for over eleven years before entering law school. In 1992, Ms. Kent graduated from law school and began working at the law firm of Gallagher and Kennedy. In 1993, Mrs. Kent decided that she wanted to work exclusively in medical malpractice, so she transferred to the law firm of Teilborg Sanders and Parks.

In 2000, Ms. Kent became associated with Richard Kent and Peter Wittekind at their firm K&W. Under Ms. Kent's initial agreement with the firm, she operated an independent practice, hired her own staff, worked on matters of her choosing, paid a share of the firm's overhead, and in exchange had access to limited K&W resources such as secretarial support, accounting services, assistance with filings, and occasional use of library materials. Ms. Kent received a monthly draw and, at the end of every quarter, the balance of her gross collections from defense cases after subtracting: (1) her draw, (2) the amount paid to her paralegal and other members of her staff, and (3) thirty percent of her gross collections that were paid to K&W. If

---

**2.** Pursuant to 11 U.S.C. § 1112(b)(3) the Court must render a decision on the matter no later than 15 days after the August 27, 2008 hearing date unless there are compelling circumstances that prevent the Court from meeting this deadline. Given the complex history and facts in this case, along with the Court's busy calendar, the deadline was extended beyond the 15 days.

2

her cases were unprofitable, Ms. Kent alone suffered the loss. Although the parties had a one-year trial agreement in 2000, the parties were unable to agree on any terms related to their relationship for subsequent years.

In 2001, Ms. Kent agreed to represent a family in a medical malpractice case despite the fact that taking the case would probably curtail future defense work because of the substantial probability of the need to sue health care providers. According to Ms Kent, Richard Kent and Peter Wittekind encouraged her to take on the family's case and promised that although a trial agreement was not in place, K&W would be fair in attempting to reach an agreement regarding distribution of the contingency fee if K&W performed any work on the case. In June of 2002, Ms. Kent filed a medical malpractice suit on behalf of the family against two parties, and later added a third party.

Near the end of 2003, Ms. Kent states that Richard Kent notified her that K&W had agreed to become outside counsel to a party associated with one of the defendants in the family medical malpractice case. Although no technical conflict existed as a result of the work arrangement between Ms. Kent and K&W, Richard Kent nonetheless insisted that Ms. Kent transfer her family medical malpractice case to another attorney. Ms. Kent refused, and on December 31, 2003, she terminated her association with K&W.

On January 1, 2004, Ms. Kent started the law firm of Kent & Associates, PLLC. Many of Ms. Kent's clients at K&W, including the family with the medical malpractice claim discussed above, transferred their cases to the new firm. As part of the transition to the new practice, Ms. Kent retained Mark Harrison, of the law firm OM, to represent her to ensure that her departure and transfer of her cases was legal and ethical. Soon after hiring OM, Ms. Kent settled with one of the defendants in the medical malpractice case.

K&W responded to the settlement by filing a lawsuit against Ms. Kent, claiming a right to a share of all proceeds from the family medical malpractice litigation. Ms. Kent, represented by OM, agreed to have the matter resolved through arbitration, so Ms. Kent and

3

K&W executed an arbitration agreement and stipulated to a dismissal with prejudice of the Superior Court lawsuit and counterclaim. The arbitrator awarded K&W 75 percent of the fees obtained from the first settlement in the medical malpractice case and 40 percent of the fees from the two remaining settlements.

Disappointed with the result, Ms. Kent pursued a litany of appellate actions against K&W. However, due to the escalating expense associated with litigating the K&W matter, the Debtors realized they had no choice but to file a petition for relief under Chapter 11. This bankruptcy case has always involved a limited number of creditors. K&W filed a claim in the amount of $1,830,227.80 based on the arbitrator's award; OM filed a claim for $407,388 for the attorneys' fees incurred by the Debtors in the dispute with K&W; the Internal Revenue Service ("IRS") filed a priority tax claim in the amount of $387,157, and an unsecured tax claim in the amount of $6,729.89; the Arizona Department of Revenue ("ADOR") filed a priority tax claim in the amount of $49,596.88, and an unsecured tax claim in the amount of $11,824.50; and the arbitrator filed a claim in the amount of $4,950 based on services rendered in the arbitration.

On March 4, 2008, the Debtors filed an objection to OM's proof of claim. The Debtors indicated that they had a viable malpractice claim against OM, which would offset any claim for attorneys' fees.

On May 27, 2008, the Debtors entered into a Settlement Agreement (the "Settlement") with K&W. Although OM objected to the Settlement, the Court denied OM's objection and approved the Settlement on July 15, 2008. Pursuant to the terms of the Settlement, the Debtors and K&W filed motions to dismiss all pending appeals and other litigation. All payments have been made by the Debtors pursuant to the Agreement.

After reaching a Settlement with K&W, the Debtors filed the current Motion to Dismiss. According to the Debtors, the resolution of the dispute with K&W rendered the bankruptcy proceeding an unnecessary expense that would only decrease the final amount to be paid to creditors. Additionally, as a byproduct of the Settlement with K&W, the Debtors have

4

received certain tax benefits that will enable them to amend previously filed federal and state tax returns. However, the type of tax benefit to be received depends on whether the Debtors' case is dismissed or remains pending.

If the case remains pending, the Debtors are only able to amend their returns to produce a loss, which loss may be used to offset tax liabilities for other years via a Net Operating Loss ("NOL"). However, this NOL may only be utilized to reduce the federal taxes that are due and owing by the Debtors. The Debtors may not apply the NOL against any state taxes that may be due and owing. If the bankruptcy case is dismissed, in contrast, the Debtors may pursue a "claim of right," which the Debtors estimate will reduce their tax liability, state and federal, by an additional $130,000 over the benefit that may be obtained through an NOL.

At the evidentiary hearing on the Motion to Dismiss, the Debtors' accountant verified the difference in the tax treatment if the case were to remain pending or be dismissed.[3] The accountant testified that the difference resulted from the IRS' position that if the Debtors remained in a bankruptcy proceeding, they assumed the identities of "debtors in possession." As such, they were not entitled to the benefits from a "claim of right" under applicable tax law. .

At the evidentiary hearing, OM presented no controverting evidence. OM stated that it had been required to expend attorneys' fees and costs as a result of the Debtors filing a bankruptcy petition. OM stated that it would be prejudiced if the case were dismissed because it would have to pursue the Debtors in some other forum to have its claim paid. Because the Debtors had objected to the OM proof of claim, OM believed that their attorneys' fees and costs could be determined by the bankruptcy court in an expeditious manner. The solution posed by OM was to have this Court adjudicate its claim for attorneys' fees and costs and then dismiss the bankruptcy petition. The Debtors argued, and Ms. Kent so testified, that a malpractice action had been commenced against OM in state court, that the Debtors intended to request a jury trial

---

**3.** The accountant's direct testimony was presented through a declaration which is admitted into evidence as Exhibit 1.

5

in the action, that an expert had been retained by the Debtors who had prepared an affidavit filed with the state court action that OM had committed malpractice, and that any award of attorneys' fees and costs to OM must be set-off against any recovery that the Debtors might receive in the malpractice action. The Debtors countered that the only way to resolve the OM claim, at this point, was to allow the matter to be resolved as a part of the malpractice action.

Ms. Kent also testified that the bankruptcy proceedings were extremely expensive, the Debtors finding it difficult to pay the attorneys' fees and costs incurred by the firms representing them in the Chapter 11 proceedings. Ms. Kent envisioned that the preparation of a disclosure statement, preparing for and attending a hearing on confirmation of the Debtors' plan, and attending to post-confirmation matters would be an additional unnecessary expense. Ms. Kent also stated that she had spent a great deal of time preparing the necessary documents to maintain the status of the Debtors in the Chapter 11 proceedings and attending hearings on various disputes. In essence, the Chapter 11 proceedings were affecting Ms. Kent's ability to devote time to her practice and earn a living.

## III. DISCUSSION

The Debtors seek dismissal of this Chapter 11 case pursuant to 11 U.S.C. § 1112(b). The Debtors argue that while Section 1112 (b)(4) provides a list of factors constituting "cause" for dismissal, since this list is not exhaustive, the Court has latitude to consider other factors in determining whether dismissal is appropriate. One of the main reasons the Debtors filed their bankruptcy petition was to resolve their dispute with K&W, their largest creditor. That dispute has now been resolved, and the Settlement Agreement has been approved by this Court. Additionally, the Debtors presented evidence that they and their accountant have now engaged in discussions with the representatives of the IRS to address the Debtors' tax liability. As noted in the Factual Discussion, the Debtors have presented evidence that the dismissal of this case will enable them to pursue a "claim of right," under applicable tax law, which will enable the Debtors to receive a tax benefit of approximately $130,000. Moreover, dismissal will

6

allow the Debtors to avoid the attorneys' fees and costs incurred with formulating and confirming a Chapter 11 plan in addition to the costs and significant administrative fees associated with the post confirmation administration of a Chapter 11 plan.

11 U.S.C. § 1112(b) was amended as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Section 1112(b)(1) now provides:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court *shall* convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause." (Emphasis added). § 1112(b)(1).

Prior to the 2005 amendments, the statute provided, in part, that

> ...after notice and a hearing, the court *may* convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate for cause, including...(Emphasis added). § 1112(b)(1) (prior to BAPCPA).

Although the parties do not challenge the Debtors' ability to so move, the Court preliminarily notes that the Debtors do have the standing to bring a motion to dismiss, since it is a "party in interest." 11 U.S.C. § 1109(b).

Next, the amendments incorporated into Section 1112(b), as a result of BAPCPA, also add an introductory qualifying phrase which carves out certain exceptions. If the language of the statute is clear on its face, the Court must enforce it as written. United States v. Ron Pair Enter., Inc., 489 U.S. 235, 243, 109 S.Ct. 1026, 103 L.Ed. 2d 290 (1989); Lamie v. United States Trustee, 540 U.S. 526 (2004). However, if there is an ambiguity, the Court may consult legislative history or engage in an appropriate analysis to provide meaning to the provision that is consistent with the overall purpose of the statute. Turner v. McMahon, 830 F.2d 1003 (9th Cir. 1987). Although somewhat confusing in syntax, the case law and a commentator have concluded that the language "[e]xcept as provided in section 1104(a)(3)[4]" now requires the Court

---

**4.** Section 1104(a)(3) provides, as follows:
(a) At any time after the commencement of the case but before confirmation of a plan, on

7

to consider three alternatives in its analysis under Section 1112(b)(1), as amended. If cause has been shown by the moving party, the Court must consider whether to dismiss the case, convert the case to one under Chapter 7, or appoint a Chapter 11 trustee, whichever result is in the best interest of creditors. <u>In re Gladys Marie Jayo,</u> 2006 WL 2433451, at 6 (Bankr. D.Idaho 2006); <u>In re Incredible Auto Sales LLC,</u> 2007 WL 1100276 (Bankr. D. Montana 2007), *citing* 7 COLLIER ON BANKRUPTCY, ¶ 1112.04[3] (15th ed. rev.). Unfortunately, a party in interest opposing such relief is only allowed to show "unusual circumstances" specifically identified by the Court in its decision, or as outlined in Section 1112(b)(2), to prevent a dismissal or conversion of the case.[5] The Section is silent as to how a party in interest opposes the dismissal or conversion of the case or the appointment of a Chapter 11 trustee. However, a review of Section 1104(a)(3), inserted as a result of BAPCPA, states that "if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate," "the court shall order the appointment of a trustee." Thus, it appears that once cause has been shown, the Court, through a balancing test, determines which result is appropriate based upon the record.

As a part of its preliminary analysis, this Court also observes that prior to the enactment of BAPCPA, it had discretion in determining whether to dismiss or convert a case if

---

request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee–

(3) if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate.

**5.** Section 1112(b)(2) provides another basis for "unusual circumstances" to be shown. The debtor, or another party in interest, must object and show that a plan of reorganization will be confirmed within the time constraints set forth for a small business, or otherwise within a reasonable period of time, and that if there has generally been an act or omission by the debtor, there exists reasonable justification for same and it shall be cured within a reasonable period of time. However, "if there is a substantial or continuing loss or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," then the debtor or party in interest does not have access to the exception under Section 1112(b)(2).

8

cause had been shown. Now Section 1112(b), as amended, provides that once cause has been shown, the Court's discretion is limited. *See* In re AmeriCERT, Inc., 360 B.R. 398, 401 (Bankr.D.N.H.2007); In re Gateway Access Solutions, Inc., 374 B.R. 556 (Bankr. M.D. Pa. 2007).[6]

Other than Section 1112(b)(2), inserted by BAPCPA, Section 1112(b) does not define "unusual circumstances." However, the phrase contemplates conditions that are not common in chapter 11 cases. In re Fisher, 2008 WL 1775123 (Bankr.D.Mont. 2008). As explained in 7 Collier on Bankruptcy, ¶ 1112.04[3], p. 1112-26, 1112-27 (15thed.rev.):

> Although section 1112(b) does not define the phrase "unusual circumstances," it clearly contemplates conditions that are not common in most chapter 11 cases. Although each chapter 11 case is to some extent unique, and unusual circumstances may exist in any particular case regardless of its size or complexity, the import of section 1112(b) is that, if cause exists, the case should be converted or dismissed unless unusual facts or circumstances demonstrate that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding.

The Courts do have significant discretion in determining whether there are unusual circumstances that weigh against conversion or dismissal. In re The 1031 Tax Group, LLC, 374 B.R. 78, 93 (Bankr.S.D.N.Y.2007) (stating that "[t]he statute explicitly provides for this discretion where a court is able to identify 'unusual circumstances ... that establish that the requested conversion is not or dismissal is not [sic] in the best interests of creditors and the estate' ").

Although the question of whether unusual circumstances have been shown is relevant as to whether the Court should dismiss or convert the case, the Court concludes that said exception does not apply to whether a Chapter 11 trustee should be appointed. The language "unusual circumstances" only modifies whether the case should be dismissed or converted.[7]

---

**6.** Each case only focuses on whether the case should be dismissed or converted.

**7.** Perhaps the language of unintended consequences, but the Section states "on request of a party in interest, and after notice and hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert . . . or dismiss . . ., whichever is in the best interests of creditors and the estate. . . ." 11 U.S.C. § 1112(b)(1).

9

1  Thus, the effect of Section 1112(b) is to permit the Court to appoint a Chapter 11 trustee perhaps
2  more readily than to dismiss or convert the case.

3              1. CAUSE EXISTS PURSUANT TO § 1112(b)

4              Pursuant to § 1112(b)(1), the initial burden lies with the Movant to establish
5  "cause" for dismissal. *See* 11 U.S.C. § 1112(b)(1). A list of what constitutes "cause" is found in
6  § 1112(b)(4). Generally, such lists are viewed as illustrative rather than exhaustive, and the
7  Court should "consider other factors as they arise, and use its equitable powers to reach the
8  appropriate result in individual cases." In re Consolidated Pioneer Mortg. Entities, 248 B.R. 368
9  (9th Cir. BAP 2000); In re Gateway Access Solutions, Inc. 347 BR 556 (Bankr. M.D. Pa 2007);
10 In re 3 Ram, Inc., 343 B.R. 113 (Bankr. E.D. Pa. 2006). Moreover, courts have wide discretion
11 in determining what constitutes such cause. See In re Johnston, 149 B.R. 158, 160 (9th Cir. BAP
12 1992); Matter of Nugelt, Inc., 142 B.R. 661, 665 (Bankr.D.Del. 1992).

13             The Debtors argue that dismissal is appropriate because dismissal is in the best
14 interests of the creditors. However, under Section 1112 (b), the Court must first find cause
15 before considering whether dismissal is in the best interests of the creditors. Based on the
16 change in Debtors' circumstances that have resulted from their settlement with K&W, cause
17 exists to dismiss this case.

18             The Debtors filed their Chapter 11 petition due to K&W's claim. Upon
19 settlement with K&W, the amount of the claims, as measured in dollars, were reduced by 68
20 percent. The Settlement also provided the Debtors with tax benefits that could be used to reduce,
21 though not completely eliminate, the priority tax claims of the IRS and ADOR. According to the
22 testimony of the Debtors and their accountant, while they could obtain an NOL while in
23 bankruptcy, such benefit would be limited because it could only be used to reduce federal, not
24 state, taxes. The "claim of right," however, could be used to reduce both the federal and state tax
25 liabilities, and would provide the Debtors with an additional $130,000 tax benefit as compared
26 with the NOL.

10

The Debtors also note that dismissal will eliminate the costs associated with the administration of a Chapter 11 plan. This benefit alone would not be sufficient to establish cause for dismissal since such costs are present in every reorganization case. However, coupling the reduction in administration costs with some other benefit, strengthens the argument that cause exists to dismiss the case. In this case, the Court concludes that the tax benefit, coupled with the reduction in administrative costs to administer a Chapter 11 plan, establish cause for dismissal under Section 1112 (b).

### 2. UNUSUAL CIRCUMSTANCES DO NOT EXIST PURSUANT TO § 1112(b)

Once "cause" has been established, the burden shifts to the non-moving party to establish whether the case falls within the §1112(b)(2) "unusual circumstances" exception to § 1112(b)(1)'s mandatory action by the Court. The Court must be able to "specifically identify" factors to establish conversion or dismissal is not in the best interest of the creditors and the estate. The Court does have discretion in determining whether there are unusual circumstances that would allow the Court to have the case simply remain pending. In re The 1031 Tax Group, LLC, 374 B.R. 78, 93 (Bankr.S.D.N.Y.2007). Here no unusual facts or circumstances have been presented that demonstrate that the purposes of Chapter 11 would be better served by maintaining the case as it is. Even OM seems to concede this point by stating that once the Court resolves the Debtors' Objection to the OM claim, the case could be dismissed. However, since the Debtors have filed the malpractice action against OM in state court, and they are asserting a right of set off against any attorneys' fees and costs that may be due and owing to OM, the Court's proceedings on the OM claim would not resolve the dispute between the parties. Moreover, the dispute at this point, given the Debtors' request for a jury trial under state law, would more appropriately be resolved in a state-court forum. Since the claims with K&W, the IRS, the ADOR, and the arbitrator have been resolved or will be shortly resolved and paid pursuant to applicable law, only the OM claim remains contested. Now that claim is more

11

appropriately resolved in another forum. Such a factual predicate does not dictate the type of special circumstances that would allow this case to remain pending.

### 3. DISMISSAL IS IN THE BEST INTERESTS OF THE CREDITORS

After finding cause and establishing that no unusual circumstances exist, the Court may dismiss or convert the case or, as noted, appoint a Chapter 11 trustee "whichever is in the best interests of the creditors and the estate. " OM has withdrawn its request for conversion, and has not separately requested the appointment of a Chapter 11 trustee.

As the Court reviews the facts presented, the Court also sees no basis by which the creditors would benefit from a conversion of the case to one under Chapter 7 or the appointment of a Chapter 11 trustee. First, according to the Debtors, neither the IRS nor the ADOR will be harmed by dismissal, since their claims are non-dischargeable. If the case were converted, the taxing entities would have their claims subordinated to those of the Chapter 7 trustee. *See* 11 U.S.C. § 507; In re Reef Petroleum Corp., 99 B.R. 355 (Bankr. W.D. Mich. 1989). If a Chapter 11 trustee were appointed, there would be additional administrative expense claims that would need to be paid prior to those of the taxing authorities, affecting when the IRS and the ADOR claims could be paid as priority claims. Moreover, the Chapter 11 trustee would be presumably a separate "entity" from the federal tax law standpoint, so the Debtors would not be able to take advantage of the beneficial tax treatment as outlined by the Debtors' accountant. Thus, according to the evidence presented, the Debtors will only be able to benefit from the "claim of right" if the case is dismissed. The dismissal of the case will allow the Debtors to use funds that may otherwise be used to pay the administrative expenses of a Chapter 7 proceeding or of a Chapter 11 trustee to pay the IRS, the ADOR, and OM. Additionally, if the case were converted, or a Chapter 11 trustee were appointed, OM's claim would be subordinated to the Chapter 7 or Chapter 11 administrative fees and the IRS and ADOR priority tax claims. Finally, if the case is dismissed, OM will still be able to pursue its claims in the state court.

12

1  OM contends that despite the fact that it may pursue its claim for attorneys' fees
2  in state court, it will be substantially prejudiced by dismissal if it occurs prior to the adjudication
3  of its claim in this Court.  However, as noted previously, the Debtors' commencement of the
4  malpractice action against OM changes the forum in which the dispute may be resolved.
5  Although OM may have incurred substantial fees, in this Chapter 11 proceeding, prosecuting and
6  defending its claim, those factors are common to any bankruptcy case and should not necessarily
7  control what action the Court should take.  Since OM remains the only creditor that has an on-
8  going dispute with the Debtors, and there already exists a state court action in which OM may
9  assert its claim for attorneys' fees and costs, that forum should be utilized by the Debtors to
10 resolve the conflicting and potentially offsetting claims that each has against the other.
11 Conversion of the case to one under Chapter 7, or the appointment of a Chapter 11 trustee, will
12 not resolve this dispute between OM and the Debtors.  It will only add an additional layer of
13 administrative costs.

    According to OM, it is not opposed to dismissal of the case if this Court
determines the amount of the OM claim prior to such dismissal.  According to OM, this will not
be a futile exercise because an order of this Court will be binding on the parties even upon
dismissal of the case.  Siegel v. Federal Home Loan Mortg. Corp., 143 F.3d 525 (9th Cir. 1998).
However, while it is true that this Court may adjudicate OM's claim, it is certainly not required
to do so.  In re Shop Television Network, Inc., 1996 WL 102580 (Cal.(C.A.9 Cal), 1996).  As
already noted, the Debtors now have an independent action against OM in state court.  The
Debtors' malpractice action provides the Debtors with a right to a jury trial and also, potentially,
allows the Debtors a claim of set-off against any attorneys' fees and costs that may be due and
owing by them to OM.  Given these circumstances, it is appropriate to allow the dispute to be
resolved in the state court.  Because the Debtors have now reduced their claims in dispute to
essentially a two-party dispute, such a matter is more appropriately resolved in a forum outside
of the bankruptcy court.  *See* In re Landmark Capital Co., 27 B.R. 273 (Bankr.Ariz.1983).

13

"[E]conomy, fairness, and comity" would dictate that this matter be resolved in another forum. *See* Carnegie-Mellon Univ. v. Cohill, 108 S.Ct. 614, 98 L.Ed.2d 720 (1998).

Given the fact that this case has essentially become a two-party dispute over attorneys' fees, regardless of the fact that "courts tend to separate malpractice awards from fee payment disputes," the bankruptcy court is not the proper forum to decide this matter. *See* Paradigm Ins. Co. v. Langerman Law Offices, P.A., 196 Ariz. 573, 575 (App. 2000) (vacated in part on other grounds by Paradigm Ins. Co. v. Langerman, 200 Ariz. 146 (2000)). Accordingly, in considering the creditor body as a whole, dismissal is in the best interest of all creditors involved.

## IV. CONCLUSION

Based upon the foregoing, the Court concludes that the Debtors have shown cause why this case should be dismissed. OM, who objected to dismissal, has not presented the Court with any unusual circumstances which would prevent the Court from dismissing the case. Given the fact that the Debtors will receive significant tax benefits outside of bankruptcy, the fact that this case has now become a two-party dispute, and the fact that the creditors may pursue their claims in state court, the Court concludes that dismissal of the case, rather than conversion of the case to one under Chapter 7, or the appointment of a Chapter 11 trustee, is in the best interest of creditors. The Debtors' Motion to Dismiss is GRANTED.

DATED this 23rd day of September, 2008

_____
Honorable Sarah Sharer Curley
United States Bankruptcy Judge

14